UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CCFI COMPANIES, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:24-cv-220 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| WENDY SPICHER, in Her Official Capacity | : | |
| as Secretary of the Pennsylvania Department | : | |
| of Banking and Securities, | : | |
| | : | |
| Defendant. | | |

---

ENTRY AND ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER
VENUE OR, ALTERNATIVELY, TO STAY DISCOVERY AND PRETRIAL
DEADLINES (DOC. NO. 25)

---

Pending before the Court is Defendant's Motion to Transfer Venue or, Alternatively, to Stay Discovery and Pretrial Deadlines ("Motion") (Doc. No. 25). Defendant Wendy Spicher, in her official capacity as Secretary of the Pennsylvania Department of Banking and Securities ("Defendant") seeks an order transferring this action to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (*Id.* at PageID 367.) Plaintiffs TitleMax of Ohio and CCFI Companies ("CCFI") (collectively, "Plaintiffs") oppose the motion and argue that this matter should remain in the Southern District of Ohio. (Doc. No. 30.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion.

I.      **BACKGROUND**

TitleMax of Ohio was a credit service organization which facilitated consumer installment loans "secured by the borrower's motor vehicle title." (Doc. No. 1 at PageID 2.) TitleMax of

Ohio facilitated these loans in brick-and-mortar stores located solely in Ohio.  (*Id*. at PageID 5.)  TitleMax of Ohio ceased operation on April 17, 2017, and sold off its portfolio, though it is still authorized to conduct business in Ohio.  (*Id*.)  CCFI is a holding company that employs individuals for its affiliates' benefit.  (*Id*. at PageID 3.)  As of July 2023, CCFI has been affiliated with TitleMax of Ohio.  (*Id*.)

Defendant is the Secretary of the Pennsylvania Department of Banking and Securities, which is responsible for administering Pennsylvania's relevant usury laws.  (*Id*. at PageID 6-7.)  Two such pieces of legislation include the Pennsylvania Loan Interest and Protection Law, 41 Pa. Cons. Stat. §§ 101–605 ("LIPL"), and the Consumer Discount Company Act, 7 Pa. Cons. Stat. §§ 6201–6221 ("CDCA").  (*Id*. at PageID 13.)  The LIPL and CDCA respectively cap the maximum interest rate that can be charged on certain loans of $50,000 and $25,000 or less.  (*Id*.)

In August of 2017 Defendant issued investigative subpoenas seeking information relating to TitleMax's lending practices with Pennsylvania residents.  (Doc. No. 25-1 at PageID 373.)  After a protracted five-year legal battle, which concluded at the Third Circuit Court of Appeals, TitleMax produced documents in response to the subpoena.  (*Id*. at PageID 374.)  On June 24, 2024, Defendant initiated a civil enforcement proceeding by issuing an Order to Show Cause against TitleMax seeking sanctions and penalties.  (*Id*.)  Plaintiffs filed this lawsuit in response.

Defendant filed the present Motion on November 5, 2024 (Doc. No. 25), and Plaintiffs filed their response on November 26, 2024 (Doc. No. 30).  Defendant filed her reply brief on December 10, 2024 (Doc. No. 36).  This Motion is now ripe for review and decision.

## II.    ANALYSIS

Defendant seeks to have this matter moved the Middle District of Pennsylvania pursuant to either 28 U.S.C. § 1404 or 28 U.S.C. § 1406 or, in the alternative, for a stay of discovery pending

a decision on her Motion to Dismiss (Doc. No. 20). As this Motion can be decided pursuant to 28 U.S.C. § 1404, the Court need not analyze 28 U.S.C. § 1406 or the request for a stay.

28 U.S.C. § 1404(a) allows a transfer of venue along the following lines: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Before determining whether the interests of justice justify a transfer, the Court must first determine whether the proposed alternative venue is a district where the action might have been brought. *See* 28 U.S.C. § 1404(a). At present, the Parties do not dispute that this action could have been brought in the United States District Court for the Middle District of Pennsylvania.

If an action could have been brought in the alternative venue, then the Court must determine whether a transfer would "prevent wastes of time, energy and money, as well as whether a transfer would protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). Factors the Court may consider include:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Coshocton Grain Co. v. Caldwell-Baker Co.*, No. 2:14-cv-2182, 2014 U.S. Dist. LEXIS 161684, at *4, 2014 WL 6473504 (S.D. Ohio Nov. 18, 2014) (quoting *Mardini v. Presidio Developers,*

*LLC*, No. 3:08-cv-291, 2011 U.S. Dist. LEXIS 3326, at *17-8, 2011 WL 111245 (E.D. Tenn. Jan. 13, 2011)). Most applicable here, the Court considers Plaintiffs' choice of forum, the location of evidence, convenience of potential witnesses, and the interests of justice, in turn.

### 1. Plaintiffs' Choice of Forum

Typically, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 U.S. Dist. LEXIS 161335, at *13, 2020 WL 5250435 (S.D. Ohio Sept. 3, 2020) ("[a] plaintiff's choice of venue, however, holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). However, where "'the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise.'" *DRFP, LLC v. Republica Bolivariana De Venez*, 945 F. Supp. 2d 890, 902-03 (S.D. Ohio 2013) (quoting *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C -1-96-1149, 1997 U.S. Dist. LEXIS 7880, 1997 WL 311474, at *3 (S.D. Ohio Mar. 30, 1997)).

This matter presents several unique issues with regard to Plaintiffs' choice of forum. First, the actions leading to this lawsuit—the loaning of money to individuals who returned to Pennsylvania—involve a scenario where an act took place in Ohio, but the result of that act inevitably had consequences Pennsylvania. Second, TitleMax of Ohio has ceased operations in the State altogether. Third, Plaintiffs identify five TitleMax stores located in the Southern District

4

of Ohio and vaguely allege, "[s]ome of these stores made loans" that form the basis of this matter. (Doc. No. 1 at PageID 5-6.)

While the Plaintiffs' choice of forum could still be afforded deference because CCFI has one of its principal places of business in Ohio, this factor weighs minimally in Plaintiffs' favor. CCFI's Ohio location is based in Dublin, Ohio, which would fall within the purview of the Columbus seat of Court for the Southern District of Ohio. This further adds to the already tangled web Plaintiffs have sought to weave in an effort to bring this case in this seat of Court. In reality, the net result of Plaintiffs' practices is that individuals returned to Pennsylvania where they were subject to their agreements with Plaintiffs. Thus, they were affected in Pennsylvania, not Ohio. Moreover, while TitleMax is permitted to conduct business in Ohio, it has ceased operations here, meaning the State's ongoing interests are affected little by this matter. For good measure, TitleMax of Ohio fails to make clear the depth of the connections this matter has to Ohio. It simply says some of its stores made loans that Pennsylvania now seeks to regulate.

The Court is not blind to Plaintiffs' broader concern that Pennsylvania allegedly seeks to enforce its laws beyond its own borders via an unconstitutional mechanism. However, as evidenced by Plaintiffs' simultaneous filing of identical lawsuits in several other states, there is nothing about their claims unique to Ohio *per se*. Instead, all of their claims are focused on Defendant's purported intrusion beyond the bounds of Pennsylvania into Plaintiffs' activities in other states. Thus, the acts of Defendant in Pennsylvania are far more the catalyst for this lawsuit than any action elsewhere.

To be perfectly clear, the fact that Plaintiffs have—in one corporate form or another—filed identical lawsuits in multiple states smacks of forum shopping.  In all practicality, the fact that Plaintiffs have filed multiple lawsuits in multiple forums appears to be an effort to get as many bites at the apple as possible outside of Pennsylvania, having already received an unfavorable ruling from the Third Circuit in 2022.  *See TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230 (3rd Cir. 2022).  "[W]here a plaintiff engages in forum-shopping, 'no deference to the plaintiff's choice of forum is warranted; indeed, federal courts have held that conduct like [that] militates in favor of transfer.'"  *Reiser v. RTI Int'l. Metals, Inc.*, No. 1:08-cv-729, 2009 U.S. Dist. LEXIS 34509, at *4, 2009 WL 1097250, at *2 (S.D. Ohio Apr. 21, 2009) (quoting *Deep v. XAC, LLC*, No. 07-8-C, 2007 U.S. Dist. LEXIS 32897, at *11-12, 2007 WL 1308356, at *4 (W.D. Ky. May 2, 2007)).

In the end, the Court is simply not convinced this dispute is deeply rooted in connections to this forum to warrant the substantial deference typically given to a plaintiff.

### 2.  Location of Evidence

The Court next looks to the location of sources of proof.  As this Court has previously held, "modern litigation largely takes place through the use of discovery platforms, file sharing systems, or simply emailing collections of PDFs."  *Tanyike v. United States*, 603 F. Supp. 3d 572, 582 (S.D. Ohio 2022) (citing *Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc.*, No. 2:13-cv-12136, 2013 U.S. Dist. LEXIS 161366, at *13, 2013 WL 6017977 (S.D. Ohio Nov. 13, 2013) ("[t]he location of documents and sources of proof have become a less significant factor in the § 1404(a) transfer analysis because of technological advances and availability of documents in electronic form").  Naturally, there will still be instances where the location of physical pieces of evidence shifts this factor in one party's favor.  This does not appear to be such a case.  The evidence in this case appears to largely be documentation.  As discussed in *Tanyike*, the ability to easily share

6

documents across forums largely negates this factor. Therefore, the location of sources of proof does not weigh in either Parties' favor.

### 3. Convenience of Witnesses

Turning to the next factor, the convenience of witnesses is "of the utmost importance." *Kay v. Nat. City Mortg. Co.*, 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007). "'Convenience to witnesses is more than a numbers game; a court should not merely tally witnesses but should instead evaluate the significance of their expected testimony.'" *Sanhua Int'l., Inc. v. Riggle*, No. 2:17-cv-368, 2019 U.S. Dist. LEXIS 80240, at *20-21, 2019 WL 2088431, at *7 (S.D. Ohio May 13, 2019) (quoting *Fryda v. Takeda Pharm. N. Am., Inc.*, No. 1:11–cv–00339, 2011 U.S. Dist. LEXIS 42221, at *7, 2011 WL 1434997, at *3 (N.D. Ohio Apr. 14, 2011)). This Court, and many others, have consistently held that "the convenience of witnesses who are a party's employees will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses." *Zimmer Enters.*, 478 F. Supp. 2d at 991; *Streeter v. Adaptasoft, Inc.*, No. 2:17-cv-1125, 2018 U.S. Dist. LEXIS 143247, at *20, 2018 WL 4030546 (S.D. Ohio Aug. 23, 2018); *Sanhua*, 2019 U.S. Dist. LEXIS 80240, *15-6, 2019 WL 2088431.

Defendant contends, "[t]he key witnesses in this case—including representatives from the Department, state enforcement officials, and consumers that were victimized by the alleged violations—are all located in Pennsylvania." (Doc. No. 25-1 at PageID 377.) However, as Plaintiffs point out, Defendant fails to provide any affidavits in support of the contention that consumer victims reside in Pennsylvania. (Doc. No. 30 at PageID 496.) For their part, Plaintiffs allege that they have identified thirty former TitleMax of Ohio employees who still reside in Ohio and, "have knowledge of TitleMax of Ohio's business activities that is relevant to Plaintiffs' claims." (*Id*.) Plaintiffs attach an affidavit from CCFI Director of Operations Christopher Dunn ("Dunn"). (Doc. No. 30-4 at PageID 543-44.) Dunn's affidavit states, "these individuals would have had knowledge of and would be familiar with TitleMax of Ohio's business practices, including that borrowers whose loans TitleMax of Ohio facilitated had to be physically present in one of TitleMax of Ohio's brick-and-mortar stores to obtain a loan facilitated by TitleMax of Ohio." (*Id*.)

The present employees of the Parties do not warrant the same level of consideration as non-employees of the parties. *See Zimmer Enters.*, 478 F. Supp. 2d at 991. Thus, the focus is truly on the non-employee witnesses. For Defendants' part, they have failed to show how many consumers are at issue in this case or how many individuals who obtained loans through TitleMax of Ohio still reside in Pennsylvania. Conversely, TitleMax of Ohio identifies thirty former employees who it believes still reside in Ohio. However, it opaquely states that these witnesses will testify to TitleMax's business practices and the fact that a consumer had to be physically present in Ohio to obtain a loan. Surely it would not take thirty separate witnesses to confirm the requirement of physical presence. Moreover, it is unclear what the substance of "business activities" or "business practices" would mean for this case.

8

Nonetheless, the Court does find that this factor weighs slightly in Plaintiffs' favor as they have demonstrated that at least some witnesses still reside in Ohio.

### 4. Interests of Justice

The Court's final consideration is fairness, and the interests of justice based on the totality of the circumstances. *Coshocton Grain Co.*, 2014 U.S. Dist. LEXIS 161684, at *4, 2014 WL 6473504 (quoting *Mardini*, 2011 U.S. Dist. LEXIS 3326, at *17-8, 2011 WL 111245). As part of this consideration the Court must look to the public interest. *Olin-Marquez v. Arrow Senior Living Mgmt.*, 586 F. Supp. 3d 759, 778 (S.D. Ohio Feb. 17, 2022) (citing *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006)). One such interest to be considered is the respective States' interests in the matter. *Worthington Indus., Inc. v. Inland Kenworth (US), Inc.*, No. 2:19-cv-3348, 2020 U.S. Dist. LEXIS 47886, at *55-57, 2020 WL 1309053, at *20-21 (S.D. Ohio Mar. 18, 2020).

Defendant contends that this matter should properly be handled in Pennsylvania as this case involves the interpretation and enforcement of Pennsylvania consumer laws. (Doc. No. 25-1 at PageID 378-79.) Moreover, Defendant argues that Pennsylvania has a strong interest in protecting its citizens from predatory lending practices. (*Id*.) Plaintiffs, on the other hand, argue that the crux of this matter involves the Defendant's attempts to apply Pennsylvania law in Ohio and the resulting constitutional injuries are felt in Ohio. (Doc. No. 30 at PageID 499-500.) Plaintiffs further opine that Pennsylvania state law is irrelevant to the Court's inquiry because this is not a diversity action, but one predicated on federal constitutional law. (*Id*. at PageID 500.)

Plaintiffs' contention that Pennsylvania law is irrelevant to this matter simply ignores reality. The Court understands Plaintiffs' argument that the loans were facilitated in Ohio and the enforcement actions brought by Defendant affect Plaintiffs' business activities in Ohio. Yet, as the Third Circuit has pointed out, the types of loans Plaintiffs are facilitating do not occur wholly outside of Pennsylvania. *TitleMax of Del.*, 24 F.4th at 240. The loans Plaintiffs facilitated were

9

secured by the borrower's motor vehicle title and Pennsylvania residents traveled to Ohio to enter into agreements with Plaintiffs at Plaintiffs' physical locations in Ohio.  (Doc. No. 1 at PageID 2.)

This matter inherently implicates Pennsylvania's interest in protecting its citizens from predatory lending practices and the constitutionality of its enforcement mechanisms.  While Ohio certainly has an interest in ensuring that its citizens rights are protected, Plaintiffs' main contention is that their constitutional rights will not and have not been safeguarded by Defendant's enforcement process.  There is no route to a decision in this case which does not involve a consideration of Pennsylvania consumer protection laws, Pennsylvania administrative legal processes, and the Pennsylvania state court system.  With all else being equal in this matter, Pennsylvania surely has the more superior interest in determining whether its laws are constitutional and whether its public servants have acted in a lawful manner.  Indeed, familiarity with the laws that form the nucleus of this dispute, Pennsylvania's interest in protecting its citizens, and Pennsylvania's interest in determining the constitutionality of its legal processes outweigh Ohio's interest here.  Ohio has an interest in protecting its citizens, but the Court cannot simply assume Pennsylvania federal courts will not do so with equal solemnity.

### III.    <u>CONCLUSION</u>

The Court finds that interests justice and the totality of the circumstances weigh in favor of transferring this matter to the United States District Court for the Middle District of Pennsylvania.  Accordingly, the Court **GRANTS** Defendant's Motion to Transfer Venue or, Alternatively, to Stay Discovery and Pretrial Deadlines (Doc. No. 25).  It is hereby **ORDERED**

that this action be **TRANSFERRED** to the United States District Court for the Middle District of Pennsylvania.

      **DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, December 11, 2024.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE